By the Court, Nelson, Ch. J.
The only material question in this case is, whether the ,4th section of title 4 of the 18th chapter of the 1st part of the revised statutes, (1 R. S. 603,) under the head of “ Special provisions relating to certain corporations,” (that section being but a re-enactment of the 6th section of the act of April 21st, 1825, “ to prevent fraudulent bankruptcies by incorporated companies” &c.,) applies to the New-York and Erie Rail-Road Company. The section is as follows : K Whenever any incorporated company shall have refused the payment of any of its notes, or other evidences of debt, in specie, or lawful money of the United States, it • shall not be lawful for such company, or any of its officers, to assign or transfer any of the property or choses in action of such company, to any officer or stockholder of such company, directly or indirectly, for the payment of any debt; and it shall not be lawful to make any transfer or assignment in contemplation of the insolvency of *224 such company, to any person or persons Avhatever; and every such transfer and assignment to such officer, stockholder or other person, or in trust for them or their benefit, shall be utterly void,” &c.
The main argument relied on to take the assignment in this case out of the operation of the above provision, is based upon the 18th section of the act incorporating The New-York and Erie Rail-Road Company, (Sess. Laws of 1832, p. 408,) which is in these words: “ This said corporation shall possess the general poAvers, and be subject to the general restrictions and liabilities prescribed by such parts of title 3d of the 18th chapter of the 1st part of the revised statutes, as are not repealed.” It is insisted that this express reference to and adoption of such of the provisions contained in the 3d title of the 18th chapter as are not in conflict Avith the charter, taken in connection Avith the fact that no allusion Avhatever is. made to the 4th title of the same chapter, virtually and necessarily exclude the operation of the provisions of the latter, upon the principle that éxpressio unius est exclusio alterius.
The eighteenth chapter of the 1st part of the revised statutes contains four titles, all of which are ranged under the general head, “ Of incorporations.” The 1st title relates to turnpike companies; the 2d to monied corporations; and the 3d and 4th embody various important general and special provisions, applicable, more or less, to every description of corporations, with the exception that the 4th is declared not “ to apply to any incorporated library or religious society; nor to any monied corporation which shall have been created or whose charter shall have been renewed, <fce., after the first of January, 1828.” (1 R. S. 605, § 11.) The 3d title is chiefly devoted to the enumeration and definition of the particular powers intended to be conferred upon corporations generally, which powers do not very essentially differ from those belonging to corporations at common law. The 4th title relates to and regulates the conduct of the directors, officers and agents, selected to direct and manage the corporate business, and contains a Avell digested code of laws, civil and penal, for the government of the corporate brother* *225 hood, to which they were intended to be as effectually subjected as natural persons are to the municipal regulations of their society. The 3d title recognizes or confers the powers and faculties by which corporations are enabled to accomplish the special objects of their creation; while the 4th title prescribes the rule of corporate action to be observed and obeyed in the fulfilment of those objects. The immediate design, operation and effect of the provisions contained in these two titles respectively, being different, the special reference to the one, in the charter of The New-York and Erie Rail-Road Company, does not either necessarily, or even reasonably, imply an intention on the part of the legislature to exclude the operation and effect of the other.
Where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former is not repealed. (The King v. Downs, 3 T R. 569; Dwarris, 674.) The same principle was applied in Goldson v. Buck, (15 East, 371,) where it was held that two acts relating to the same subject, conferring several powers to be exercised for different purposes, might well subsist together, and the former not be repealed by implication.
The invariable rule of construction in respect to the repealing of statutes by implication, is, that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other,(a) or unless, in the latest act, some express notice *226 is taken of the former, plainly indicating an intention to abrogate it. As laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subjects, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcileable. Hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law if the two acts may well subsist together. (Dr. Foster's case, 11 Co. 63 ; Weston's case, Dyer, 347; 10 Mod. 118; Bac. Abr. Statute, (D); Dwarris, 673 to 675.)(b)
Within these rules, I do not see how a well founded doubt can be entertained upon the case under consideration. Independently of the 18th section of the rail-road charter, both the 3d and 4th titles of the 18th chapter of the 1st part of the revised statutes would have applied to this company, being a system of general regulations to which all corporations of the class are made subject unless specially exempted by law. The insertion of the 18th section into the charter was wholly a work of supererogation, so far as concerns its expressed intent; for had that section been omitted, the company would still have possessed all the powers, and been subject to all the restrictions and liabilities specified in the 3d title, not inconsistent with the charter. And yet we are asked to give to this section an important effect by implication, viz. to declare that it operates a total repeal of the 4th title. The settled rule as to the construction of statutes, as already shown, forbids that we should do so. There is no repugnancy or contradiction between the former law and the 18th section of the charter, even conceding to it all the effect and operation professedly intended by the legislature. Grant that it adopts the provisions of the 3d title; surely there is nothing in these which is inconsistent or irreconcileable with those contained in the 4th title. On the contrary, the provisions of *227 both may continue in force together and operate upon the corporate body according to the different purposes for which they were originally enacted. The truth doubtless is, that as the provisions of the charter went to modify some of the general powers conferred by the 3d title upon all corporations in the state, the 18th section was introduced from abundant caution, to confirm to the company such of these general powers as were unaffected by the charter; and hence the section, in terms, adopts such parts of the title “ as are not repealed.”
It has been urged that the 4th title should be confined to corporations in existence at the time of its re-enactment in 1828; (Sess. Laws of 1828, p. 24, § 17;) and hence, that The New-York and Brie Rail-Road Company have never been subject to its provisions. Independently of the broad and unqualified terms of the enactment, and of the rule that all general laws are prospective in their operation, it is sufficient to refer to the last section of the 4th title as clearly indicative of the intent of the legislature that the provisions of that title should apply as well to future as existing corporations. The section is careful to exempt not only moneyed corporations then existing, but such as should be created or whose charter should be renewed or extended after the first of January, 1828. If the legislature had not understood and intended the act to be general, and that it should operate upon corporations subsequently created, the latter part of the exception would have been useless.
I think the learned judge erred; and a new trial must be granted.
New trial granted.

 If the two are repugnant, of course the last act governs, upon the principle that it is presumed to express the last intention of the makers. Accordingly, where the proviso of an act of parliament was directly repugnant to the purview of it; held, that the proviso should stand and be deemed a repeal of the purview. (Attorney General v. The Chelsea Water Works Co., Fitzg. 195. See 1 Kent’s Comm. 463.) So, where two repugnant acts of parliament were passed during the same session to take effect on the same day, that which last received the royal assent was held to prevail. (The King v. The Justices of Middlesex, 2 Barn, & Adol. 818.) As to the general doctrine, see Nichols v. Squire, (5 Pick. 168 ;) Ellis v. Page, (1 id. 43,45;) Bartlett v. King, (12 Mass. Rep. 537, 545;) Pease v. Whitney, (5 id. 380, 382;) Pearce v. Atwood, (13 id. 324;) Commonwealth v Kimball, (21 Pick. 373, 377; 1 Law Reporter, 270, S. C.)

 See M’Cartee v. The Orphan Asylum Society, (9 Cowen, 437, 506;) Commonwealth v. Kimball, (21 Pick. 373, 377, S. C. 1 Law Reporter, 270;) United States v. Hewes, (2 Law Reporter, 329, 330.)